Morris Gross and Erna Gross, et al. [1] v. Commissioner. Gross v. Commissioner
Docket Nos. 2402-70 - 2408-70.
United States Tax Court
T.C. Memo 1972-207; 1972 Tax Ct. Memo LEXIS 50; 31 T.C.M. (CCH) 1026; T.C.M. (RIA) 72207; September 26, 1972
Willard Horwich, for the petitioners. Allan Herson, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in the income tax of each petitioner for the taxable year 1966 as follows: Petitioner
Deficiency
Morris Gross and Erna Gross
$4,934.45
Noel C. Novarro
529.00
Stephen B. Novarro and Kathleen M. Novarro
735.67
Allen F. Van Schaick and Arden F. Van Schaick
$ 962.82
Frank J. Novarro and Sylvia Novarro
2,845.85
Stewart B. Novarro
647.48
Sam S. Novarro and Grace R. Novarro
2,150.15
*51 Some of the issues raised by the pleadings have been disposed of by agreement of the parties leaving for our decision the following: 1027 (1) Whether an amount paid in 1966 by a partnership composed of petitioners is deductible as an ordinary and necessary business expense or constitutes the purchase price of an option to purchase a leasehold interest in property; (2) In the alternative, if the expenditure by the partnership was for the purchase of an option to purchase a leasehold interest in land, is the issue of whether that option lapsed in 1967 properly before us in this case and, if it is, did the option lapse in 1967; (3) Whether petitioners Morris and Erna Gross are entitled to deduct automobile expenses for the year 1966 in excess of the amount determined to be deductible by respondent. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners Morris Gross and Erna Gross are husband and wife who at the time of filing their petition herein resided in Alhambra, California. They filed a joint Federal income tax return for the taxable year 1966 with the district director of internal revenue, Los Angeles, California. Petitioner *52 Noel C. Novarro resided at Covina, California at the time of filing his petition herein. He filed a Federal income tax return for the taxable year 1966 with the district director of internal revenue, Los Angeles, California. Petitioners Stephen B. Novarro and Kathleen M. Novarro are husband and wife who at the time of filing their petition herein resided in Covina, California. They filed a joint Federal income tax return for the taxable year 1966 with the district director of internal revenue, Los Angeles, California. Petitioners Allen F. Van Schaick and Arden F. Van Schaick are husband and wife who at the time of filing their petition herein resided in San Marino, California. They filed their joint Federal income tax return for the taxable year 1966 with the district director of internal revenue, Los Angeles, California. Petitioners Frank J. Novarro and Sylvia Novarro are husband and wife who at the time of filing their petition herein resided in South Pasadena, California. They filed their joint Federal income tax return for the taxable year 1966 with the district director of internal revenue, Los Angeles, California. Petitioner Stewart B. Novarro resided at Covina, California *53 at the time of filing his petition herein. He filed his Federal income tax return for the taxable year 1966 with the district director of internal revenue, Los Angeles, California. Petitioners Sam S. Novarro and Grace R. Novarro are husband and wife who at the time of the filing of their petition herein resided in Covina, California. They filed their joint Federal income tax return for the taxable year 1966 with the district director of internal revenue, Los Angeles, California. Claimed Partnership Deduction On or about October 1, 1966, Huntington by the Sea Mobile Village (hereinafter sometimes referred to as "Huntington"), a partnership, commenced business. The partners of Huntington and their percentage shares of Huntington income, credit and deductions are as follows: Percentage
Partner
Share
Sam Novarro
20
Frank Novarro
20
Allen F. Van Schaick
20
Morris Gross
20
Noel Novarro
6 2/3
Stewart Novarro
6 2113
Stephen Novarro
6 2113
On October 11, 1966, Glendale Federal Savings and Loan Association (hereinafter sometimes referred to as "Glendale") entered into an agreement with Sam Novarro, Frank Novarro, Allen F. Van Schaick and Morris Gross, *54 referred to in the agreement collectively as "Buyer." This agreement stated in part as follows: GLENDALE hereby gives BUYER an option to purchase their leasehold interest and all its right title and interest in the real property and improvements, both real and personal, for convenience referred to as: Huntington Beach Seaside Mobile Park * * * formerly designated as GLENDALE Loan No. 5813-80109-G upon the following terms and conditions: (1) Upon exercising the option, GLENDALE will furnish BUYER with marketable title * * *; (2) The purchase price shall be the sum of: (a) the amounts advanced and/or disbursed under the above-numbered loan, including foreclosure costs * * *; (b) the amounts necessary to fully complete the construction of 1028 improvements for a trailer park on said land; * * * (3) The option to be exercised by payment of 3 months leasehold rent within 90 days after issuance of Certificate of Occupancy and the balance within 180 days following the recordation of a Notice of Completion * * *; (4) The consideration for said option is as follows: (a) Concurrently with the execution of this Agreement BUYER will pay to GLENDALE the sum of $46,774.22, *55 representing amounts advanced by GLENDALE for lease payments and property taxes, plus $7,962.50 as three months advance rent under said lease, for a total of $54,736.72. Except as otherwise provided for herein, all further lease payments shall be advanced by GLENDALE and, to the extent not reimbursed, shall be considered as part of the option purchase price. (b) BUYER will complete the project * * *; said completion to be at cost, * * * said sums to be advanced by GLENDALE as part of the purchase price; * * * (6) GLENDALE shall provide all the funds necessary to complete the project * * *; (7) Upon BUYER electing to exercise this Option, GLENDALE shall by means of a note secured by a deed of trust on said project, and as a part of the purchase price, loan to BUYER the sum of $550,000.00 covering said leasehold estate * * *; (8) The Option shall be exercised by BUYER depositing in an escrow, upon the signing of escrow instructions by the parties hereto to carry this Agreement into effect, the cash down payment equal to the difference between the loan of $550,000.00 and the purchase price. The property referred to in the agreement is a tract of land located in Huntington Beach, *56 California. The owner of the fee title is Mills Land and Water Co., but the property is encumbered by a 99-year ground lease created in 1961. Glendale prior to October 1966 had acquired the lessee's interest in that 99-year lease by reason of a foreclosure of the lessee's interest under the terms of financing between Glendale and the lessee. Subsequent to that foreclosure, Glendale made lease payments on the lease and paid property taxes. At the time the October 11, 1966 agreement was executed, a partially completed mobile home park was situated on the property. Sometime after October 11, 1966, Huntington assumed the rights, duties and obligations of Buyer pursuant to the October 11, 1966 agreement. The individual partners of Huntington commenced work on finishing the construction of the mobile home park on the leased property sometime in July or August 1966. The work was completed during June 1967. A Certificate of Occupancy as to the mobile home park was issued by the City of Huntington Beach on June 13, 1967, and the Notice of Completion for all of the work which was done was recorded on June 26, 1967. Glendale provided all of the funds necessary to pay for the construction *57 costs at the mobile home park. On or about October 11, 1966, Huntington paid to Glendale the sum of $54,736.72 which included the total of the amounts Glendale paid to the lessor of the property as lease payments and property taxes and also included $7,962.50 as 3 months advance rent under the terms of the lease referred to in the October 11, 1966 agreement. Glendale applied the $54,736.72 it received on October 11, 1966 as reimbursement of its own expenses previously paid out and not as part of the purchase price of the leasehold interest in the property. On December 7, 1967, Huntington and Glendale opened an escrow pursuant to which Huntington purchased the lasehold interest from Glendale. On April 25, 1968, the partners of Huntington deposited with Glendale the sum of $205,000. Glendale renegotiated the terms of the agreement with Huntington and made a loan to the partnership of $606,000 to apply against the purchase price of the leasehold interest in the property. The escrow was closed on May 7, 1968. On its partnership return of income for 1966, Huntington deducted the $54,736.72 paid to Glendale under the October 11, 1966 agreement as an ordinary and necessary expense and *58 reported a partnership loss which was reported in a prorata amount as a partnership loss deduction by each partner on his 1966 income tax return. Respondent disallowed all of the deductions taken by the partners of Huntington with respect to the $54,736.72 payment other than the amount of $7,962.50 deducted as rent expense by Huntington. Facts with Respect to Claimed Automobile Expense Deduction Petitioner Morris Gross was in the real 1029 estate business in the year in issue. During that year, he owned two automobiles, a Cadillac and a Ford, both of which were garaged at his home. Petitioner Erna Gross, the wife of Morris Gross, does not drive an automobile. The daughter of Morris Gross lived on the campus at the University of California at Los Angeles, some 22 miles from her home. She sometimes drove the Ford automobile to the campus and kept the car there overnight. Morris Gross did not allow his daughter to drive his Cadillac during the year in issue. During the year in issue, Morris Gross drove his Cadillac approximately 19,750 miles. On December 12, 1966, petitioners Morris and Erna Gross incurred expenses of $64.46 on their Cadillac. On December 28, 1965, Morris and *59 Erna Gross incurred expenses of $141.17 on their Cadillac. On their 1966 joint Federal income tax return, petitioners Morris and Erna Gross deducted automobile expenses in the amount of $1,050 incurred in connection with a property rental business and respondent in his notice of deficiency did not disallow any part of this claimed deduction. On the 1966 joint Federal income tax return petitioners Morris and Erna Gross also deducted the following claimed expenses of the real estate sales business: Business car expense, gas, oil and lubes
$2,737
Repairs, maintenance, and tires 493
$3,230
Respondent disallowed $2,106.05 of this claimed deduction. Opinion I Claimed Partnership Deduction The cost of an option to purchase property is not an expense deductible in the year it is paid under sections 162 or 212 of the Internal Revenue Code of 1954 but is, rather a nondeductible capital expenditure to be added to the cost of the property if the property is later purchased or treated as a loss or deduction in the year the option expires if the option is not later exercised. Respondent contends that of the $54,736.72 which Huntington transferred to Glendale *60 on or about October 11, 1966, the amount of $46,774.22 represents the purchase price of an option and is consequently a nondeductible capital expenditure in the year 1966. Petitioners take the position that their partnership, Huntington, did not purchase an option but rather reimbursed Glendale for the expenses it had paid with respect to the property after it took the property under foreclosure of a mortgage but before the October 11, 1966 agreement was entered into. Petitioners contend that the transaction on October 11, 1966 was nothing more than a principal reimbursing an agent, the agent being Glendale. There is nothing in the record to indicate that Huntington ever appointed Glendale as its agent. The evidence clearly shows that the Huntington partnership purchased an option on or about October 11, 1966. It is of no consequence to Huntington or to its partners that the price of the option was measured by Glendale's out-of-pocket expenses with respect to the property after it acquired the property by foreclosure. The manner in which Glendale treated for accounting purposes its receipt of the amount of $46,774.22 paid to it by Huntington does not cause the payment to be something *61 other than the price of an option to Huntington. We find that the Huntington partnership on or about October 11, 1966 purchased for $46,774.22 an option to purchase from Glendale a leasehold interest in property and that the cost of this option is not deductible in 1966 by Huntington in computing the distributable partnership gain or loss to be reported by the partners. Petitioners' alternative contention is that the option purchased by Huntington on or about October 11, 1966, expired in 1967 unexercised. It is petitioners' position that because each of the partners of Huntington was in the building construction or sales business, the loss which the partnership suffered in 1967 upon the claimed lapse of the option resulted in a net operating loss which should be carried back to the year in issue, 1966. Petitioners concede on brief that even if the option in issue did lapse in 1967 and its cost were treated as a net operating loss to Huntington distributed proratably to the partners, the tax liability for none of petitioners would be affected for the taxable year 1966. Petitioners contend that even though the tax liability of none of them for the year 1966, the only year here in *62 issue, would be affected by a determination of whether the option purchased by Huntington on or about October 11, 1966 did in fact lapse in 1967, we should nevertheless decide this issue. The only year here before us is the year 1966. We are without jurisdiction over any 1030 other year except that we are authorized to consider facts with relation to other years to the extent necessary to determine the deficiency for the year or years before us. [2] Under the facts of this case we are without jurisdiction to determine the issue as to whether the option acquired by Huntington in 1966 lapsed in 1967. II Automobile Expense Issue On their joint Federal income tax return filed for the taxable year 1966, petitioners *63 Morris Gross and Erna Gross claimed deductions in the amount of $3,230 relating to automobile expenses incurred in Morris' real estate sales business and deductions in the amount of $1,050 relating to automobile expenses incurred in Morris' real estate rental business. Respondent allowed all of the automobile expenses claimed by petitioners relating to the real estate rental business but only $1,123.95 of the claimed expenses relating to the real estate sales business. Morris Gross testified that he drove his Cadillac only for business purposes and that he would not allow his daughter to operate his Cadillac. Petitioner Erna Gross does not know how to drive. The Cadillac was driven 19,750 miles during the year in issue, 1966. Even if we were to assume that the Cadillac was driven exclusively for business purposes during 1966, petitioners' total allowable automobile expense would be the amount of $1,832.50 under the standard mileage method rates in effect for the taxable year in issue. See Rev. Proc. 66-10 (C.B. 1966-1, 622). [3] Petitioners have not shown that any car other than the Cadillac was used for business purposes or any specific item of operating costs of the *64 Cadillac in 1966 except one $64.46 payment. Under respondent's determination, petitioners are allowed to deduct $2,173.95 for automobile expenses. Petitioners have failed to show error in respondent's determination. Accordingly, we find that petitioners Morris and Erna Gross did not incur deductible automobile expenses in any amount greater than determined by respondent. To reflect the concessions made by the parties, Decisions will be entered under Rule 50. Footnotes
1. Cases of the following petitioners are consolidated herewith: Noel C. Novarro, Docket No. 2403-70; Stephen B. Novarro and Kathleen M. Novarro, Docket No. 2404-70; Allen F. Van Schaick and Arden F. Van Schaick, Docket N/. 2405-70; Frank J. Novarro and Sylvia Novarro, Docket No. 2406-70; Stewart B. Novarro, Docket No. 2407-70; and Sam S. Novarro and GraceR. Novarro, Docket No. 2408-70.↩
2. Sec. 6214(b), I.R.C. 1954 provides: (b) Jurisdiction Over Other Years. - The Tax Court in redetermining a deficiency of income tax for any taxable year or of gift tax for any calendar year shall consider such facts with relation to the taxes for other years as may be necessary correctly to redetermine the amount of such deficiency, but in so doing shall have no jurisdiction to determine whether or not the tax for any other year has been overpaid or underpaid.↩
3. Rev. Proc. 66-10, C.B. 1966-1, 622, states in part as follows: Sec. 3. Optional Method of Computing Operating Costs. Subject to the conditions and limitations set forth below, deductions will be accepted if computed at a standard mileage rate of (a) ten cents per mile for the first 15,000 miles of use each year for business purposes and (b) seven cents per mile for use for business purposes in excess of 15,000 miles per year. Computation under this method is optional on a yearly basis. .01. A deduction computed under this method shall be in lieu of all operating and fixed costs of the automobile allocable to business purposes. * * *↩